HENRY WHITNEY V. TEXAS CENTRAL RAILROAD COMPANY.

Decided March 25, 1908.

**1.—Personal Injuries—Minor—Discretion—Contributory Negligence.**

It appearing from the undisputed evidence that the plaintiff, a minor between 16 and 17 years of age, possessed the average intelligence and discretion of a boy of that age, and that he fully understood the danger of climbing and riding upon moving railway trains, and continued to do so despite the warnings and orders of the defendant's employes, the court properly assumed, in its instructions to the jury, that the plaintiff was guilty of contributory negligence in persisting in such acts, and properly refused instructions exonerating him of negligence by reason of his youth.

**2.—Discovered Peril—Evidence.**

Upon the issue of discovered peril, in a suit for personal injuries sustained by a minor in a railroad yard, evidence considered, and held sufficient to support a finding of a jury to the effect that the employes of the defendant were not guilty of negligence.

**3.—Appeal—Assignment of Error.**

Assignments of error which merely state that the court erred in giving certain charges, and then copy the charges, omitting altogether to furnish any information as to the objections thereto, are not entitled to consideration on appeal.

**4.—Trespasser—Contributory Negligence.**

Contributory negligence is a bar to a recovery in a suit for personal injuries whether the injured party was a licensee or trespasser on the premises where he was injured. Hence the exclusion of evidence tending to show that the plaintiff in such suit was a licensee, and not a trespasser, was harmless, if error at all, the undisputed evidence showing that he was guilty of contributory negligence.

Appeal from the District Court of McLennan County. Tried below before Marshall Surratt.

*Eugene Williams* and *W. B. Carrington*, for appellant.—The court erred in giving the fourth paragraph of its charge to the jury, which was as follows:

"If you do not find for the plaintiff under the foregoing paragraph

of this charge, then you will return a verdict for the defendant; or if you believe from the evidence that the plaintiff at the time that he was injured was hanging on to the side of one of defendant's cars, or attempting so to do, while the same was in motion, and that defendant's agents and servants in charge of said train did not know of such efforts, if any, so being made by the plaintiff, if any; and you further believe that in making such efforts, if any, or while riding on the same, if he was, he fell and received the injuries complained of, then and in that event, if you so find, you will find for the defendant."

Plaintiff, by reason of his tender years and lack of discretion, and under the facts and circumstances in evidence, was not guilty of contributory negligence, at least, he was not guilty of contributory negligence as matter of law, but this was an issue which should have been presented to the jury under proper instructions. Davis v. St. L. S. W. Ry. Co., 92 S. W., 831; St. Louis S. W. v. Abernathy, 68 S. W., 539; Ollis v. H. E. & W. T., 73 S. W., 30; Houston E. & W. T. v. Ollis, 83 S. W., 850; Gulf, C. & S. F. v. Cunningham, 30 S. W., 367; Railway v. Marrs, 85 S. W., 188 (Ky.); Railway v. Phillips, 37 S. W., 620.

*J. A. Kibler,* for appellee.—The plaintiff being a trespasser in the private switch yards of defendant at the time of his injury, and his own testimony having shown that he was guilty of contributory negligence, as a matter of law, which proximately caused and contributed to his own injury, the servants and employes of defendant were under no duty to keep a lookout for him in said yards, and his right to recovery therefore depending alone on the question of discovered peril, the trial court properly refused the special charges requested by plaintiff. Houston & T. C. Ry. Co. v. Kauffman, 101 S. W., 817; Texas & P. Ry. Co. v. Breadow, 36 S. W., 410; San Antonio & A. P. Ry. Co. v. McMillan, 102 S. W., 103; Missouri, K. & T. Ry. Co. v. Crowles, 67 S. W., 1078; Bennett v. Ry. Co., 82 S. W., 333.

Conceding that defendant's switchmen and other employes did instruct, permit or invite plaintiff to ride on its cars and engines and to remain in and about its private switch yards, as testified to by him, in the absence of testimony showing that such employes had authority to so instruct, permit or invite plaintiff, he was in law a trespasser, and defendant was under no duty toward him, except to use the means at hand to prevent injury, after they actually discovered him in peril. Missouri, K. & T. Ry. Co. v. Rogers (Sup. Ct.), 36 S. W., 245; Graham v. Ry. Co. (Sup. Ct.), 93 S. W., 104; Texas & P. Ry. Co. v. Black, 57 S. W., 333; Railway Co. v. Cocke, 68 Texas, 713; Railway Co. v. Dawkins, 77 Texas, 228; Railway Co. v. Black, 27 S. W., 118; Railway Co. v. Mayfield, 79 S. W., 365; International & G. N. Ry. Co. v. Anderson, 82 Texas, 518.

The evidence introduced by plaintiff and that introduced by defendant as to the time, place and manner in which the accident occurred being absolutely destructive one of the other, the court properly denied plaintiff the right to recover under any other theory than that shown by his own evidence. San Antonio & A. P. Ry. Co. v.

Jazo, 25 S. W., 712; Gulf, C. & S. F. Ry. Co. v. Scott, 27 S. W., 827; San Antonio & A. P. Ry. Co. v. McMillan, 102 S. W., 105.

The court properly refused to permit plaintiff to testify that the switchman, Therall, had offered to pay him to assist in switching, because it was not shown, or attempted to be shown by any evidence in the entire case that Therall had any authority to employ plaintiff, or that his offer to pay him was in any manner binding on defendant, and in the absence of such evidence, the excluded testimony was inadmissible. Missouri, K. & T. Ry. Co. v. Rogers (Sup. Ct.), 36 S. W., 245; Graham v. Ry. Co. (Sup. Ct.), 93 S. W., 104.

FISHER, CHIEF JUSTICE.—This is a suit by appellant, a minor, against the appellee for the sum of $50,000 damages, on account of the loss of both of his feet and a portion of both legs, alleged to have been caused by the negligence of the defendant on December 14, 1904; that at the time he was injured he was between 16 and 17 years of age; that he was invited and permitted to ride on one of defendant's engines then being operated in its yards at Waco; that he mounted the engine by permission of the employes in charge of the train to which the engine was attached, and that he left the engine for the purpose of turning a certain switch to let the train back down into the yards; that while he was running along the track in front of the tender, in order to turn the switch, without warning to him, and through the negligence of the defendant's servants, knowing his dangerous position, and that he was a minor, he was run down and injured by the backing locomotive running over his feet and legs, as stated; that it was the duty of the engineer and those in charge of the train to look out and discover the whereabouts of the plaintiff after he had alighted from the engine, and that they failed to exercise any care to ascertain his whereabouts, and that they negligently backed the engine upon him; that his presence could have been discovered, and was actually discovered and his peril known to those in charge of the engine, and that they failed to·use all means at hand to stop the engine or to warn the plaintiff after his peril was discovered. It is further alleged that the plaintiff was a child of tender and immature years, which fact was known to the servants of appellee in charge of the train, and that they negligently permitted him to mount the engine, go upon the track, operate the switches and to be in the switch yards and in and about the trains, and that they exercised no care to keep him away, and that he was there with the permission, acquiescence, consent and invitation of the employes of appellee; that they knew of his probable danger and took no steps to avoid it.

The defendant in its answer pleaded a contract of settlement, which we need not further notice; and also that the plaintiff was guilty of contributory negligence in placing himself in a dangerous position at the time he was injured, and that he was a trespasser in the defendant's yards and in and about its trains, and that he had been specially warned of his danger and requested and ordered to keep away from the yards and trains. The answer gives a different statement of the ·manner in which the plaintiff was

injured than that set out by plaintiff in his petition. It is substantially averred that as the train was moving and in operation the plaintiff was hanging to one of appellee's cars, with his feet upon the trucks, and that such position was dangerous, and as a result he fell and the cars ran over his legs.

The principal issues submitted to the jury are embraced in subdivisions 3 and 4 of the general charge of the court. These charges treat the appellant as guilty of contributory negligence, and submit to the jury as the sole question of appellee's liability, whether the employes in charge of the train discovered the peril of appellant in time to have avoided injuring him.

The verdict of the jury was in favor of the railway company, upon which judgment was rendered, thus determining the fact that the dangerous position of the appellant was not discovered in time to prevent the accident. The manner in which the accident occurred and the evidence bearing upon the question as to whether the plaintiff was guilty of contributory negligence, and whether or not his peril was discovered, is explained by the following testimony.

It appears from the evidence of the plaintiff, Henry Whitney, that he was between 16 and 17 years of age at the time he was injured. He testified that after the regular passenger train of defendant came into the station on the night of the accident, and and when the employes of defendant started to switch the train in the yards, one, Granville Therall, one of the switchmen of the train, told him to board the train and go up to the west end of the yards and throw the switch; that he got inside of the train on the tender between the coal box and the engine, and when in that position he talked with the engineer, switchman and fireman; that this was a switch engine attached to the cars, and after the train had backed out a piece he intended to get down and throw the switch; that after he had been there a short time he got down on Mann Street just at the crossing; when he got down he went around in front of the train, which appears from his evidence to have been the tender—the locomotive at the time was backing; that he was walking up the track and was going to throw the switch, that the switch was about 15 or 20 feet beyond Mann Street; that he dismounted from the engine for the purpose of opening the switch, and he says that the engineer was aware of his purpose. He ran along the side of the tender until he got to the track, and went upon the same immediately in front of the moving train, and was just at that time struck by the tender, or he had taken a few steps and gone a very short distance when he was struck. His testimony is a little confusing as to just how far he was from the approaching train when he entered upon the track, or just how long he had been there, but it is clear that he knew that the train was approaching when he entered upon the track, and that he gave no signal to the engineer to stop, and that if he was not struck immediately when he entered upon the track, the time thereafter was so short as not to be able to estimate it. It appears from his evidence that the switch was located on the opposite side of

the track from which he left the engine; that he could have gotten off on the side of the switch; that when he attempted to cross the track to get to the switch, there was no necessity of undertaking to do so in front of the moving train, because he admits in his evidence that the switch was not to be thrown until the train had passed beyond it, and then was to be opened for its return in order for it to enter the siding. Having alighted on the opposite side from the switch, he could have remained there until the train had passed, then crossed over in safety for the purpose of throwing the switch. He says the engine was backing, the headlight was turned towards the coaches. "The end of the tender was in the direction I was going. I do not know how far ahead of the tender I fell before the train hit me. The steps knocked my feet out from under me and threw me across the rail. (It is apparent that the step here referred to is the step on the back end of the tender.) It just knocked me up the track a foot or two before the train caught me. The wheels of the tender were only a foot or two from me when I fell across the track. I had seen railroad trains operated all my life; I knew how they were operated; I knew it was dangerous for anyone to be in the wrong place around one of those trains, if you were caught in the wrong place. By the wrong place, I mean fooling around and getting in the way and getting run over. I knew it was dangerous to step across a railroad track in front of a moving tender, if you got close enough to it. I knew how close I was; I can not explain exactly how close I was on it, but I could see it right there. I was trying to get across the track before the tender caught me. It was there close to me; I can not explain how close, but it was not very far. I do not know how far, about 15 or 20 feet from me as I started across the track. As I stepped over the first rail the train hit my feet and knocked my feet from under me. I was not going straight across the track. I was running angling across the track, going away from the tender, and just as I stepped on the track this board hit me and knocked me down. I do not know how many times I was in the yards for the six months preceding the time I was hurt. I could not make any guess as to the number of times. I was in there lots of times. I had been running over there, off and on, for three or four months. I guess I was there as many as eighteen times. When I was over there I was riding around and throwing switches for them every night after I would get off from work. I was there as many as eighteen times, riding trains and throwing switches during the three months before I was hurt. I understood the danger of being in a railroad yard at night; I knew it was dangerous to be caught in the wrong place there. There are a good many wrong places in the switch yards of a railroad at night. I knew that at the time. It is a wrong place if you are going along too slow and just get in front of a tender and let the train run over you. The train may run over you if you are going along too slow, and if you happen to fall down, the train is more than apt to catch you. I knew all that before I got in front of this tender and appreciated it. I knew that if the train hit me I was

more than apt to get killed or hurt. I took the chance. I did not have any idea of the train catching me. After I got on the track after I had passed the tender, I never looked back to see how far the train was from me. After I got over the first rail going that way over the track, the tender hit me when I was stepping over the second rail. I don't guess the engineer saw me when I fell, but the fireman was sitting on that side, and there was no way in the world to keep him from seeing me. When I got off the engine the fireman had his face up the track. He could have seen me when I was falling on the outside of the rail. He could not have seen me when I was behind the tender before I fell outside. I don't know how long it was from the time I fell until my legs were run over—just right away as soon as I fell. It was about that quick (snapping his fingers). It was done within the time you could count two, almost. When I got off the engine, the engineer was running the engine. He had just quit talking to me when I got off the train. He slowed the train just before I got to Mann Street, so that I could run across the track. I was aiming to cross the track at Mann Street, but the train had got to Mann Street and I did not have the time to cross, and I was running up the track further to cross angling that way, and just as I was stepping across the last rail, the train hit my feet. I knew which way the engineer was looking when I got off. He was looking up the track. From the time I got off until I was run over I had run across Mann Street and very near to the switch, and was crossing the track. From the time I got off the engine until I was run over, I had run about 40 feet. After I had got down and started off, I do not know whether the engineer was looking up the track or which way he was looking. I did not say anything to the engineer about throwing the switch just as I was getting off the engine, but he knew that I was going to throw the switch."

It appears from the evidence of the plaintiff that on the night of his injury he was in company with one, Jimmie Rhodes, another colored boy, and the evidence of Rhodes is to the effect that he was with plaintiff at the time he was injured, and his version of the affair is substantially to the effect that he and the plaintiff were in the habit of frequenting the yards and riding upon trains; that they had been run out of the yards by appellee's servants and warned not to return; that on the night of the accident he and appellant had made an effort to board the cars on one side, and were driven from that position by those in charge of the train and they went to the other side of the cars and there plaintiff, in an effort to mount the cars, with his feet upon one of the trucks, fell and was run over. The evidence of this witness is also to the effect that at the time the plaintiff was injured and prior thereto, none of the servants in charge of the train discovered his situation; that he notified the engineer that the plaintiff had been injured, then the train was stopped.

Another account of the manner in which the plaintiff was injured is contained in the written statement made by the plaintiff a short time after the accident furnished to the railway company, in which

he says: "I was swinging on a car moving in the yards in Waco. I was holding on the side of the coach and had my feet on the steps. Another boy jumped on right where I was. He fell and then I fell and the cars ran over my feet." The plaintiff denied that he was injured in the manner testified to by the witness Rhodes, and also denied the truth of the statement contained in the written instrument referred to.

This is substantially all of the evidence tending to show how the plaintiff was injured, and his situation and position at that time with reference to the moving train. As to the question of discovered peril, we will refer to the evidence upon that subject later on.

There are assignments which are based upon the refusal of the court to give certain charges which are predicated upon the theory that plaintiff was of immature age and lacking in discretion, and that the employes in the yards and about the trains who may have had a knowledge of that fact and of the presence of plaintiff and other boys on this occasion, rested under the duty to exercise ordinary care to keep a lookout for their safety and to see that they were not exposed to peril by reason of the dangers they might encounter from moving trains. The discussion of this question and those related to it, will practically dispose of the entire case. We will not stop to consider whether these charges are properly framed and correctly present the rule of law that should be applied in such a case, for, in our opinion, they were properly refused upon the ground that the plaintiff, who was between 16 and 17 years of age at the time of the accident, was a boy of average intelligence and discretion for his age, and fully understood the nature of the acts in which he was then engaged, and was fully aware, so he admits, of the danger to which he was exposed in entering upon the yards of the appellee, and to be encountered from moving trains. If in such a case he voluntarily exposed himself to peril, and as a result he was injured, he was guilty of contributory negligence which barred his recovery, unless his peril was discovered in time to prevent injuring him. We might assume that the employes in and about the yards and trains who were aware of the presence of the plaintiff, did not exercise ordinary care for his safety in the respect pointed out in these instructions, still no cause of action would arise if the plaintiff placed himself in a position of danger, and at the time possessed intelligence and discretion sufficient to realize and appreciate the probable consequences of his acts and the peril to which he was exposed, unless, as before said, his perilous situation was discovered in time to prevent injuring him. It is apparent from his evidence that the plaintiff was of sufficient intelligence and discretion to know what he was doing, and to appreciate the consequences that might result from his acts, and fully realized and understood the danger to which he would be exposed in entering upon the yards, and to which he was actually exposed before and at the time of the injury. That the plaintiff was guilty of and should be held to the consequences of contributory negligence, was the conclusion of the trial court, for the instructions he gave

were based upon the theory that plaintiff could only recover in the event those operating the train which ran over him discovered his peril in time to prevent striking him. That this was the correct view of the evidence, we entertain no doubt.

It is next to be considered whether his danger was discovered in time to prevent the injury. The court, in effect, instructed the jury that liability would result in the event his peril was discovered, and this was the only substantial question which was left for their consideration, other than the question of the extent of damages. The testimony shows that at the time of the trial in the court below the engineer was dead. The fireman testified and flatly contradicted the plaintiff. His evidence is to the effect that the plaintiff was not upon the engine on the night that he claimed he was injured; that he did not get down from the engine and go in front; that he had no conversation with him and the engineer; that the plaintiff was not injured in the manner in which he testified. The fireman testified, speaking of the plaintiff: "As well as I remember, the boy was about the second-class coach, somewhere about the middle of the train; he was about two coach lengths from the engine;" and his testimony upon this subject excludes the idea that the boy was in front of the engine when he was injured. If the jury believed this evidence, which was doubtless the case, it negatived the effect of the boy's evidence, in which he testified that he was in a position to be seen by the engineer or fireman in front of the moving engine.

Furthermore, assuming that the statement of the boy was correct that he was injured by being struck by the tender, still the jury may have reached the conclusion that his position of danger was not discovered by either the engineer or fireman before he was struck. If we concede that the engineer knew that the boy left the engine for the purpose of going to the front to throw the switch, it does not necessarily follow that the engineer knew that the boy was going to undertake to cross the track in front of the moving train, when there was no occasion or necessity for so doing. The switch was on the opposite side from where the boy alighted, and the engineer knew that the switch was not to be thrown until the train had passed and was coming back on its return, and it could not be inferred from the knowledge of the fact that the boy had gone to the front, that he would or had exposed himself to danger. As to the other positions it is claimed that the boy occupied when he was injured, there is no evidence that any of the servants of appellee saw him in a position of peril in time to have prevented the injury.

As to those charges which were requested and refused that present the rule of emergency, calling for prompt action upon the discovery of peril, it is enough to say that they were properly refused, because that point was fully covered by the court in its general charge.

Appellant's fourth assignment complains of the fourth subdivision of the charge; his eighth assignment complains of the third subdivision of the charge. In view of the facts, both of these charges were properly given. But, however, we could well refuse to consider

these assignments, because there are no propositions stated under them that point out the supposed errors in the charges. The assignments merely state that the court erred in giving the charges, and then copy the charges, omitting altogether to furnish any information as to the supposed objections thereto.

The ninth assignment complains of the action of the court in not permitting the plaintiff to testify as to what occurred between him and the switchman Therall on the night of and before the time of the accident. The plaintiff did testify as to a part of what transpired between him and the switchman, but if all which was sought to be proven was admissible, it could not have affected or changed the result, provided the appellant was guilty of contributory negligence. This proposed evidence would merely have some bearing in tending to explain why plaintiff entered upon the yards of appellee and started to throw the switch. Assume that the explanation would have shown that he was not a trespasser, or from it could have been gathered the fact that Therall, one of the switchmen, employed or invited him to throw switches for him that night, no benefit could have resulted to plaintiff's case if he was guilty of contributory negligence and should be held responsible for his conduct on the occasion of his injury. It makes no difference why it was that he entered upon the yards and undertook to do the switching, if in so doing he stepped immediately in front of the backing engine, under circumstances which he knew, or must in the nature of things have known, was dangerous. If he possessed the requisite judgment and discretion to understand the nature and the probable consequences of his act, this voluntary exposure to danger deprived him of all remedy, unless his perilous situation was discovered. The plaintiff's account of his injury is solely confined to the backing of the engine as the cause, and he strenuously denies that he fell from a moving car when he was trying to mount the same, or from a car when hanging onto the same; but, singular to state, in parts of his brief he makes use of such supposed facts as a basis for recovery. But, however, if the inconsistency of such double pretensions could be overlooked, it must yield to the fact that the act of the appellant in placing himself in a position so occupied on the moving cars was as much contributory negligence as was the act in going in front of the moving engine; and all that we have said in reference to this latter fact would apply to this phase of the case. We have pointed out the evidence which shows that the appellant was injured in one of the ways stated; and there is no evidence which shows that any of the employes in charge of the train discovered his peril; or, at least, the evidence upon this subject is of such a character as would justify the conclusion that no such discovery was made, which fact the burden rested upon the plaintiff to establish.

We find no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.